UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD JAMES MORGAN,

      Petitioner,                      Case No. 2:20-CV-12910

v.                           UNITED STATES DISTRICT COURT JUDGE
                                    GERSHWIN A. DRAIN

O'BELL TOM WINN,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Harold Morgan, ("Petitioner"), confined at the Saginaw Correctional Facility in Freeland, Michigan, filed an Application for a Writ of Habeas Corpus through counsel, Robert J. Dunn, pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree premeditated murder, MICH. COMP. LAWS § 750.316. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted following a jury trial in the Montmorency County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

1

Defendant admits that he killed the victim. The victim is defendant's grandniece and defendant was friendly with the victim's live-in boyfriend, Justin Slieff. Slieff testified that he would provide defendant with marijuana and that defendant would often borrow money from him. According to Slieff, defendant's frequent visits to the couple's home became an issue approximately two months before the homicide when the victim complained that defendant was visiting too often. Slieff stated that, although defendant stayed away from the home for a while, in the two weeks before the killing, defendant would frequently show up at the home unannounced when no one was home. Slieff stated that defendant's behavior caused the victim to become upset with defendant on several occasions and that the couple informed defendant that he could only visit if he asked their permission beforehand.

Then, on the evening of August 23, 2017, Slieff found the victim unresponsive in their home as a result of a ligature strangulation and two stab wounds to the chest. Ligature abrasions on the victim's neck were consistent with being caused by a shoelace and a broken shoelace was found in the home, as was a shoe with a missing shoelace. Slieff testified that the shoe belonged to the victim, but that she never wore it. According to Slieff, the shoe was in a different place than the last time he saw it. The victim's dog was locked in a crate or kennel upstairs, despite neither the victim nor Slieff ever doing so.

Before trial, the Center of Forensic Psychology evaluated defendant regarding his competency to stand trial and criminal responsibility. The evaluators concluded that defendant was competent to stand trial and that he was not legally insane when he committed the alleged crime. On June 12, 2018, the trial court entered an order denying defense counsel's request for a second competency evaluation. On July 27, 2018, three days before trial, defense counsel filed a notice of intent to introduce the insanity defense and an emergency motion requesting an independent criminal-responsibility evaluation. The trial court, again, denied defendant's request.

Defendant was charged with open murder. At trial, defendant testified that, on the day in question, while neither the victim nor Slieff were in their home, he entered the home and put the victim's dog in a kennel

upstairs. Defendant testified that, when the victim returned home, she yelled at him and he "snapped." According to defendant, he strangled the victim in a "rage" and then stabbed her twice with a knife. Defendant did not know how long he strangled the victim or where he obtained the knife he used to stab her. Defendant also testified that he has a history of mental illness.  Defense counsel argued that defendant was guilty of only voluntary manslaughter, but the jury found defendant guilty of first-degree murder. This appeal followed the trial court's imposition of a life sentence without parole.

*People v. Morgan*, No. 345603, 2020 WL 969146, at * 1 (Mich. Ct. App. Feb. 27, 2020); *lv. den.* 506 Mich. 891947 N.W.2d 798 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether the circuit judge denied defendant appellant his right to present a defense guaranteed [to] him by the Sixth Amendment when he refused at timely request for the appointment of an independent forensic examiner to do a criminal responsibility evaluation after one had already been done for the People, or in the alternative, did defense counsel deny Morgan effective assistance of counsel by waiting too long to request an expert and not requesting an instruction on the defense[;]


II. Whether the court of appeals' order of February 8, 2019 denying remand for an independent forensic examination renders it impossible to know whether trial counsel would have a real opportunity to prevail on an insanity defense such that appellate counsel now has no way to establish the second prong of *Strickland* necessary for a showing of ineffective assistance of counsel[;]

III. Whether the circuit judge's failing to grant a directed verdict of acquittal on first-degree premeditated murder disregarded clearly established U.S. Supreme Court authority in *Jackson v[.] Virginia*[;]

IV. Whether defense counsel deprived his client of his Sixth Amendment right to the effective assistance of counsel by conceding guilt to second-degree murder without obtaining his client's consent

after a letter from the defendant-appellant was admitted into evidence which included a request for a guilty verdict of manslaughter.

## II.  Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

4

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

**A. Claim # 1. The trial court did not deprive petitioner of due process or the right to present a defense by refusing to appoint an independent forensic examiner to conduct a second criminal responsibility examination.**

Petitioner first argues that his right to due process and his right to present a defense was infringed when the trial court refused defense counsel's request to appoint an independent forensic examiner to conduct a second criminal responsibility evaluation, after a psychiatrist at the Forensic Center for Psychiatry had concluded, after conducting a mental evaluation of petitioner at defense counsel's request, that petitioner was not insane at the time of the murder.

In *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), the U.S. Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

In the present case, petitioner was evaluated by a psychiatrist at the Forensic Center for Psychiatry, who found that petitioner was competent to stand trial and that he was not insane at the time of the murder. The trial judge's refusal to appoint a second expert to evaluate petitioner's competency and his sanity was not an unreasonable application of clearly established federal law. "By its own terms, *Ake* 'limit[ed] the right [it] recognize[d]' to 'provision of *one* competent psychiatrist.'" *Leavitt v. Arave,* 646 F.3d 605, 610 (9th Cir. 2011)(quoting *Ake*, 470 U.S. at 79)(emphasis added). In light of this "unambiguous language," the Ninth Circuit held that a defendant "'lacks the right to appointment of a second psychiatrist,' even where the first psychiatrist is alleged to be incompetent or reaches a diagnosis unfavorable to the defense." *Id.* (quoting *Pawlyk v. Wood*, 248 F.3d 815, 824 (9th Cir. 2001) and citing *Harris v. Vasquez*, 949 F.2d 1497, 1516–17 (9th Cir. 1990)). The Supreme Court has never "held that a trial court violated *Ake* by refusing to appoint a second, let alone third, mental health expert." *Id.*

Other circuits have reached similar conclusions. See *Allen v. Mullin,* 368 F. 3d 1220, 1236-37 (10th Cir. 2004)(state trial court's refusal to appoint neuropsychologist to assist petitioner charged with murder during competency trial did not violate due process; court did appoint expert, and every witness who testified at competency trial opined that petitioner was competent)*; Granviel v. Lynaugh*, 881 F. 2d 185, 191 (5th Cir.1989)(*Ake* did not require appointment of an additional psychiatrist); *Martin v. Wainwright*, 770 F.2d 918, 934 (11th Cir.1985) (*Ake* did not require appointment of a second neurologist).

The Sixth Circuit has not yet addressed whether or not a state court is required under *Ake* to appoint additional psychiatric experts to evaluate a defendant after the trial court has already appointed an expert to evaluate the defendant's mental state.  However, in *Fautenberry v. Mitchell*, 572 F.3d 267, 269-71 (6th Cir. 2009), the Sixth Circuit ruled that a federal district court did not err in denying a state murder defendant's motion, made pursuant to 18 U.S.C. § 3599f, to appoint a neuropsychologist to assist the defendant in the preparation of his state clemency petition.  In so concluding, the Sixth Circuit relied on the fact the defendant had previously been examined by a neuropsychologist and the defendant failed to show that the previous examination was incomplete, outdated, or unreliable.

Likewise, in *U.S. v. Clark*, 385 F.3d 609, 617-18 (6th Cir. 2004), the Sixth Circuit held that the district court did not abuse its discretion in refusing to

authorize an additional psychological evaluation of an indigent defendant based on the defense expert's speculation that further examination of the defendant might provide relevant information about the voluntariness of the defendant's post-arrest statement to the FBI. *Id.* The Sixth Circuit reasoned that because the district court judge already had a report from the prison psychologist finding that the defendant had no illness or cognitive deficit that would have hindered his ability to give a voluntary statement, the district court reasonably concluded that the defense expert's services were not necessary to challenge the admissibility of the defendant's statements. *Id.*

Finally, in *Matlock v. Rose*, 731 F.2d 1236, 1244 (6th Cir. 1984), the Sixth Circuit held that a state trial court's refusal to provide a habeas petitioner with an additional psychiatric, neurological and physical examination at its expense did not deprive the petitioner of a fair trial where, even though petitioner's sole defense was insanity, there was little, if any, evidence which suggested that the petitioner's sanity was in doubt.

*Ake* does not require the appointment of more than one expert to evaluate a defendant's mental state.  Thus, the trial judge's refusal to appoint a second expert to evaluate petitioner's competency or sanity was not contrary to clearly established Supreme Court precedent and thus does not entitle petitioner to habeas relief.

8

Petitioner also claims that the trial judge's refusal to appoint an independent forensic examiner to conduct a second criminal responsibility evaluation denied him the right to present a defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

9

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner fails to show that the trial judge's refusal to appoint an independent forensic examiner to provide a second criminal responsibility evaluation deprived him of a fundamentally fair trial. Petitioner fails to state with any specificity the content of any proposed expert's testimony nor has he established that any such expert would have offered testimony that would have established that petitioner was insane when he murdered the victim. Accordingly, petitioner is not entitled to relief on his claim. *Mackey v. Dutton*, 217 F.3d 399, 409-10 (6th Cir. 2000).

**B.  Claims # 1, #2, and # 4.  The ineffective assistance of counsel claims.**

Petitioner in his first and fourth claims argues he was denied the effective assistance of trial counsel.  Petitioner further argues in his second claim that the Michigan Court of Appeals erred in refusing to remand the case to the state trial

court to conduct an evidentiary hearing on his ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211(C)(1).

Taking petitioner's evidentiary hearing claim first, the Court does not have the power to grant habeas relief on petitioner's claim that the Michigan Court of Appeals improperly denied his motion to remand for an evidentiary hearing pursuant to M.C.R. 7.211. There is no federal constitutional right to appeal a state court conviction. *Cleaver v. Bordenkircher*, 634 F. 2d 1010, 1011 (6th Cir. 1980). Where a habeas petitioner alleges a denial of his right to appeal a state criminal conviction, he is not entitled to federal habeas relief. *Tate v. Livesay*, 612 F. Supp. 412, 413 (M.D. Tenn. 1984). In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Whether the Michigan Court of Appeals erred in its application of M.C.R. 7.211 in denying petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 F. App'x. 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of

ineffective assistance of counsel on appeal. *Id.* at 585.   Accordingly, petitioner

would not be entitled to habeas relief on his second claim.

    To show that he or she was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test.   First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as the

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984).   In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id*. In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Strickland,* 466 U.S. at 689.   Second, the defendant must show that

such performance prejudiced his defense. *Id*.   To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694.   The Supreme Court's holding in *Strickland* places the

burden on the defendant who raises a claim of ineffective assistance of counsel,

and not the state, to show a reasonable probability that the result of the proceeding

would have been different, but for counsel's allegedly deficient performance. *See*

*Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner first contends that trial counsel was ineffective for failing to move in a timely manner for the appointment of an independent forensic examiner to conduct a second criminal responsibility evaluation of petitioner.

Defense counsel did request that a competency and criminal responsibility examination be conducted on petitioner by the Forensic Center for Psychiatry. The psychiatrist found petitioner to be competent and further found that he was criminally responsible. Defense counsel's subsequent decision to pursue an insanity defense only three days before trial was predicated on petitioner's letter that he sent to a local newspaper admitting the murder and claiming schizophrenia. In the letter, petitioner stated that manslaughter was his "goal." (ECF No. 18-10, PageID. 467-68).

Petitioner is unable to show that counsel was ineffective for failing to request an independent psychiatric evaluation when counsel, in fact, did make a motion, albeit a month before trial (ECF No. 18-6, PageID. 185), and again three days prior to the first day of trial (See ECF No. 18-7), for the court to appoint an independent psychiatric expert. *See Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Moreover, petitioner has not shown that he was legally insane at the time of the crime or at the time of trial, thus, he fails to show that he was prejudiced by

counsel's failure to obtain an independent psychiatric evaluation. *Powell*, 332 F. 3d at 398.  Petitioner alleges that he was insane at the time of the crime because he suffers from several mental illnesses.

Under Michigan law, "legal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.'" *People v. Carpenter*, 464 Mich. 223, 230-231; 627 N.W.2d 276 (2001)(quoting MICH. COMP. LAWS § 768.21a(1)). "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MICH. COMP. LAWS § 768.21a(3).

Petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F. 3d 607, 611 (6th Cir. 2010).  Michigan law "recognizes a continuum of mental functioning," such that mental illness is a necessary, but not sufficient, requirement for an insanity defense. *People v. Ramsey*, 422 Mich. 500, 513, 375 N.W.2d 297, 302 (Mich. 1985). "Insanity by definition is an extreme of mental illness." *People v. Fultz*, 111 Mich. App. 587, 590, 314 N.W.2d 702, 704 (Mich. Ct. App. 1981). That is, "the statutes provide that all insane people are mentally ill but not all mentally ill people are insane." *Id.*

14

The trial judge referred petitioner to the Center for Forensic Psychiatry and the psychiatrist in a very lengthy and thorough report found that petitioner did not have a mental illness or intellectual disability that prevented him from appreciating the nature and quality or wrongfulness of his conduct or the capacity to conform his conduct to the requirements of the law at the time period currently in question. (4/27/18 Criminal Responsibility Evaluation, ECF No. 19, PageID. 787-816). Moreover, the petitioner failed to show that he has an expert who would testify that he was legally insane at the time of the murder, thus, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715  (6th Cir. 2000).

Secondly, as one court has noted: "[t]here is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F. 3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37 (1989)).   Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense. *See e.g. Silva v. Woodford,* 279 F. 3d 825, 851 (9th Cir. 2002); *See also Sneed,* 600 F. 3d at 611 (counsel not ineffective in failing to present insanity defense where "public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial),

indicate that this was not an attractive defense"). Petitioner is not entitled to habeas relief on this claim.

Petitioner next claims that trial counsel was ineffective for conceding that petitioner was guilty of the lesser included offense of second-degree murder.

The Michigan Court of Appeals rejected the claim:

> Defendant also argues that he was denied the effective assistance of counsel because trial counsel conceded in his closing argument that there was sufficient evidence to convict defendant of second-degree murder. We disagree. Defendant is correct that a counsel may not concede a defendant's guilt without his consent. See *McCoy v. Louisiana*, 584 U.S. ——, ——, 138 S. Ct. 1500, 1505, 200 L. Ed. 821 (2018). Yet, in this case, defendant admitted to killing the victim. In his closing argument, trial counsel reiterated that defendant was not contesting this element of the crime. Trial counsel, however, did not argue that defendant was guilty of second-degree murder. Rather, trial counsel acknowledged that defendant had an intent to kill the victim, an element of second-degree murder, but argued that this intent was negated by defendant's reasonable emotional excitement at the time of the offense, such that defendant was guilty of manslaughter, but not second-degree murder. This argument is consistent with defendant's "goal" of a manslaughter conviction and therefore provides no basis for concluding that trial counsel was unconstitutionally ineffective.

*People v. Morgan*, 2020 WL 969146, at * 3 (internal footnote omitted).

A defendant is denied the right to the assistance of counsel if his or her attorney concedes the defendant's guilt to the crimes charged where "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1505 (2018).

Petitioner's case is distinguishable from the defendant's case in *McCoy*.

First, petitioner did not deny killing the victim, only that he killed the victim in a "rage" and that he suffered from mental illness.

Secondly, defense counsel did not concede petitioner's guilt to the original first-degree murder charge or to the lesser offense of second-degree murder. Instead, counsel conceded that petitioner had intended to kill the victim, but that this intent was negated or mitigated by petitioner's state of mind, such that petitioner was guilty only of voluntary manslaughter. (ECF No. 18-11, PageID. 599-600).   Under Michigan law, "murder and manslaughter share the common element of being intentional killings, the element of provocation distinguishes manslaughter from murder." *Draughn v. Jabe*, 803 F. Supp. 70, 76 (E.D. Mich. 1992), aff'd, 989 F.2d 499 (6th Cir. 1993)(citing *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346 (1991)). "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason.... In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control." *Id.* (quoting *Pouncey* at 389).   Counsel's argument was consistent with petitioner's goal to obtain a verdict of guilty on the lesser offense of voluntary manslaughter. Petitioner is not entitled to relief on his claim.

**C. Claim # 3.  The sufficiency of evidence claim.**

Petitioner finally argues that the trial court erred in denying his motion for a directed verdict, because there was insufficient evidence of premeditation and deliberation to convict him of first-degree murder. [1]

The Supreme Court has indicated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

---

[1] Petitioner's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).

When addressing a sufficiency of evidence challenge, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *See also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *See also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's adjudication of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of

19

this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

The Michigan Court of Appeals rejected petitioner's claim:

> Viewing the record evidence in a light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant's killing was premeditated and deliberate. For months before the killing, defendant was involved in disagreements with the victim. The record shows that defendant entered the victim's empty home and put her dog in a kennel. Ligature marks on the victim's neck show that she was strangled with a shoelace and a shoe found in the home was missing a shoelace. Slieff testified that the victim had not worn the shoe and that the shoe had been moved since he last saw it. Given that no witness explained how the shoe lost its shoelace, the jury could reasonably infer that defendant removed the shoelace in preparation of his attack on the victim. Moreover, defendant stabbed the victim twice with a knife near the end of the attack, but could not explain where he procured the knife. Again, a reasonable inference from this testimony is that defendant brought the knife to the victim's home in preparation of the attack or found the knife in the home before the attack. In sum, a rational jury could reasonably infer from the evidence presented that defendant planned a surprise, fatal attack on the victim as retaliation for her disagreements with him over the preceding months. Accordingly, the record is sufficient to support a finding of premeditation and deliberation.

Therefore, defendant was not entitled to a directed verdict on the charge of first-degree murder.

*People v. Morgan*, 2020 WL 969146, at * 4.

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. *Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W.

21

2d 535 (1975)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).  "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).  Use of a lethal weapon will support an inference of an intent to kill. *Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).  Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998).

The evidence established that petitioner had been in several disagreements with the victim in the months prior to the killing.  Evidence that petitioner had a prior dispute with the victim supports a reasonable inference that the subsequent killing was premeditated. *Scott*, 302 F.3d at 603.  Petitioner strangled the victim with a shoelace.  Under Michigan law, "[E]vidence of manual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.'"

*Davenport v. MacLaren*, 964 F.3d 448, 464 (6th Cir. 2020), *rev'd on other grds sub nom. Brown v. Davenport*, 142 S. Ct. 1510 (2022)(quoting *People v. Johnson*, 460 Mich. 720, 597 N.W.2d 73, 79 (1999)(quoting *People v. Furman*, 158 Mich. App. 302, 404 N.W.2d 246, 249–50 (1987)).   Petitioner then stabbed the victim twice with a knife that the jury could infer he brought to her house, since petitioner could not otherwise account for where he found the knife.   Petitioner's act of bringing a knife to the dispute supports an inference of premeditation, as does the fact petitioner stabbed the victim several times. *See People v. Oros*, 502 Mich. 229, 248–49, 917 N.W.2d 559, 569 (2018)(defendant's act of obtaining a knife, a lethal weapon, combined with his stabbing the victim 29 times, supported a finding of premeditation and deliberation).   The fact that petitioner both strangled the victim and then stabbed her could support a finding of premeditation, because it would show that petitioner had opportunity in between each method of assault to reflect upon his actions. *See People v. Kelly,* 231 Mich. App. 627, 642; 588 N.W.2d 480 (1998); *See also Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)(premeditation shown by fact that petitioner first attempted to choke the victim before turning to another method to kill her). Petitioner fled the scene afterwards, which also supports a finding of premeditation. *See e.g. Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004). The fact that petitioner did not attempt to seek medical help for the victim after the stabbing could lead a rational trier of fact to

conclude that petitioner acted with premeditation and deliberation when he killed the victim. *See Delisle*, 161 F. 3d at 389 (circumstantial evidence of premeditation established by petitioner's failure to help victims after car drove into lake).

A federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims. This Court cannot say that the Michigan Court of Appeals' rejection of petitioner's insufficiency of evidence claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established law." *Jackson*. *Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007). "While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution." *Titus v. Jackson*, 452 F. App'x. 647, 650 (6th Cir. 2011). Petitioner is not entitled to relief on his third claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree

that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court denies petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. **ORDER**

Based upon the foregoing, **IT IS ORDERED**:

(1) That the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.** Petitioner is **DENIED** leave to appeal *in forma pauperis.*

SO ORDERED.

Dated:  June 6, 2023                                    /s/Gershwin A. Drain
                                                                    GERSHWIN A. DRAIN
                                                                    United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 6, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk